# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1913.

---

STATE, EX REL. GRANT G. MARTIN, ATTORNEY GENERAL, APPELLANT, V. FARMERS & MERCHANTS BANK OF OAKLAND, APPELLEE.

FILED JANUARY 16, 1913. No. 17,505.

1. Statutes: AMENDMENT. Section 11, art. III of the constitution, "No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed," required that the section as amended shall contain all that is substituted for the original section, and the original section shall be entirely repealed.

2. Banks: "BANKING ACT": CONSTITUTIONALITY. The proviso to section 45 of the banking law, as amended by the act of 1911 (Laws 1911, ch. 8), and the proviso to the repealing clause of that act which attempt to keep the amended sections in force as to such banks as change to national banks before a specified time, and to repeal the amended sections as to all other state banks, violate the clause of amendment XIV of the federal constitution which guarantees the equal protection of the laws, and are void; but this does not affect the validity of the remainder of the act, since these provisos cannot be regarded as inducement to its passage.

APPEAL from the district court for Burt county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Grant G. Martin, Attorney General,* and *E. J. Clements,* for appellant.

*Stout & Rose, contra.*

4                    (1)

SEDGWICK, J.

In 1909 the legislature enacted a statute entitled "An act for the regulation, supervision and control of the business of banking, and to provide penalties for its violation." Laws 1909, ch. 10. Section 45 provided for statements to the state banking board once in six months showing the average daily deposits for the period subsequent to the next preceding statement, and that the state banking board shall within 30 days after such statement levy assessments thereon, the first four assessments to be one-fourth of one per cent. of the average daily deposits, and afterwards one-twentieth of one per cent. It was provided that the first statement should be made within 30 days after the act took effect, and the second on the 1st day of December, 1909. Section 46 of the act, as originally enacted, provided that as soon as the assessments were made the bank should "set apart, keep and maintain in their said banks the amount thus levied against them," and that the amount so kept should constitute a "depositors' guaranty fund," payable to the state banking fund on demand for the uses and purposes hereinafter provided. Section 47 of the original act provided that if the funds from any cause prior to July 1, 1910, should be reduced to an amount less than one-half of the one per cent. of the average daily deposits, or after that date should be reduced to an amount less than one per cent. of the average daily deposits, a special assessment should be levied to cover such deficiency not exceeding one per cent. of the average daily deposit in any one year. All proceedings under the act were enjoined by the federal courts. The injunctions were continued in force until the supreme court of the United States determined that the act did not violate any provision of the federal constitution. *Shallenberger v. First State Bank,* 219 U. S. 114. The mandate of the supreme court reversing the decision of the lower court was received and filed in the circuit court on the 30th day of March, 1911. Thereupon the

legislature of 1911 enacted chapter 8 of the laws of that year, entitled "An act to amend sections  *  *  *  45, 46, 47 and 58 of chapter 8 of the Compiled Statutes of 1909 (being sections 45, 46, 47 of the act of 1909 above quoted, and other sections)  *  *  *  and to repeal said original sections  *  *  *  as the same now exist, and to declare an emergency." As amended by the act of 1911, section 45 provides that the first statement should be made on the 1st day of June, 1911, and every six months thereafter, and that the assessment should be made on the first day of the month next succeeding the statement. There was no other change made in the section, except that the proviso hereinafter quoted was added thereto. Section 47, as it now is by the act of 1911, substituted the date July 1, 1912, for July 1, 1910, as it was before the amendment. Otherwise the section is unchanged. Nothing had been done under the act while its operation was suspended during the litigation in the federal courts, and the plain purpose of the legislature in amending these two sections was to postpone the commencement of proceeding under the act; that is, to make the statute express the result that had already been brought about by the action of the federal court. This respondent, prior to the year 1909, was a corporation organized under the laws of this state and doing a general banking business, and continued until on the 26th day of May, 1911, when it surrendered its state charter and became a national bank under the act of congress.

In October, 1911, the attorney general began this action in the district court for Burt county to procure a writ of mandamus to compel the respondent to file with the state banking board a statement "showing the average daily deposits in the Farmers & Merchants Bank of Oakland, Nebraska, for the six months next preceding the 25th day of June, 1909; for the six months next preceding the 1st day of December, 1909; for the six months next preceding the 1st day of June, 1910; for the six months next preceding the 1st day of December, 1910; and for the period between the 1st day of December, 1910, and the 26th day of May,

1911, exclusive of public money otherwise secured." The district court refused the writ and dismissed the action, and the relator has appealed.

By the act of 1911 the following proviso was added to section 45: "Provided, however, that if any bank now operating under a charter issued by the state desires to go into voluntary liquidation or change to a national bank before the assessments provided for in this section become due and payable, the provisions of this section shall not release said bank from the payment of any assessments now due from it to the depositors' guaranty fund as provided for in chapter 8 of the Compiled Statutes for 1909. In the event that any bank now operating under a charter issued by this state voluntarily liquidates or changes to a national bank before the assessments provided for in this section become due and payable, the provisions of chapter 8 of the Compiled Statutes for 1909, shall, in so far as said banks are concerned, be in full force and effect and shall govern and control, and in the event said bank goes into voluntary liquidation or changes to a national bank before the assessments provided for in this section become due and payable, the provisions of chapter 8 of the Compiled Statutes for 1909 shall be and remain in full force and effect, and the amount due from said bank on the assessment provided for in chapter 8 of the Compiled Statutes for 1909 shall be paid by said bank to the secretary of the banking board; said amount shall be by the secretary of the banking board placed on deposit to the credit of the depositors' guaranty fund in any bank to be designated by the secretary of the banking board, said funds to be subject to the order of the banking board." Also the act of 1911 (laws 1911, sec. 2, p. 85) repealed all of the aforesaid sections "as the same now exist," and to the repealing clause added the following proviso: "Provided, however, that nothing in this act contained, repealing any part of chapter 8 of the Compiled Statutes for 1909, shall be construed to release any chartered bank in this state that goes into voluntary liquidation or changes

from a state to a national bank before the assessments provided for in this act become due and payable, and in the event any bank operating under a charter voluntarily liquidates or changes from a state to a national bank before the assessments provided for in this section become due and payable, then the provisions of chapter 8 of the Compiled Statutes for 1909, in so far as they affect said bank, shall be in full force and effect and are not repealed by this repealing clause." The purpose of these two provisos and the effect thereof, if they are valid, was to classify state banks, putting those which should continue as state banks after July 1, 1911, into one class, and those which should become national banks or cease to do business as state banks, before that date, into another class, and requiring the one class to pay into the banking fund the amount of all assessments that would have been made under the original act prior to the 1st day of July, 1911, if the operation of that act had not been suspended, and relieving the other class from the obligation to make such payments.

1. The respondent insists that the original sections were entirely repealed by the act of 1911, and that no liability can be predicated thereon; that the provision of section 11, art. III of the constitution, that "no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed," requires the legislature to repeal the whole section when it is amended, and that it is incompetent to repeal it in part only. The relator insists that, if the constitution forbids such repeal, then the whole act of 1911 is invalid, and the defendant is liable under the original act. He cites *Waters-Pierce Oil Co. v. Texas*, 177 U. S. 28, upon this proposition. In that case it was held: "A repeal of Tex. act 1889, permitting foreign corporations to do business in the state, does not result from the provision of Tex. act 1895, exempting labor organizations, on the ground that this provision is unconstitutional, since, if it were so, the entire act would

be void and could not operate as a repeal of the former act." (44 L. ed. 657.) The court in that case, however, was considering the fourteenth amendment to the federal constitution. It was not considering, and had no occasion to declare, the force and effect of the clause of our constitution above quoted. The meaning of this provision is that the section as amended shall contain all that is substituted for the original section, and the original section shall be entirely repealed. The legislature could, of course, repeal the original section, and then so frame the amended section as to contain such parts of the original section as desired. If we consider that the proviso, which is a part of the section as amended, re-enacts the former law, so far as it relates to banks which nationalized before July 1, 1911, and that the whole of the former sections specified in the repealing clause are repealed, and so evade the provision of our constitution in that regard, the question still is, whether, in connection with the other proviso quoted, it is valid legislation.

2. Can banks be classified upon such basis for such a purpose? Amendment XIV to the federal constitution extends the equal protection of the laws to banks and individuals interested in banks. It is contended that to distinguish between banks that continue as state banks and those that become national banks would be allowable for some purposes under the authorities, and that when so classified they may be subjected to different restrictions. The basis for classification must have some relation to the purpose for which the classification is made. Banks may be classified upon the basis of the amount of their capital stock for some purposes. Our statute so classifies them. A bank with a capital stock of $25,000, or more, may be located in towns and villages of 1,000 inhabitants, but banks with less capital stock cannot. A statute that provided that banks with a capital stock of $25,000 should be exempt from assessments for the guaranty fund while participating in the benefits thereof, but banks with a less capital should not be exempt from such assessments, would

not afford the small banks the equal protection of the laws. The federal statute authorizes banks to become national banks and provides the manner of so doing. The statute cannot prevent such action, nor add to the qualifications or conditions prescribed by the general government. Our statute prescribes a penalty of $50 for each day that the statement of average daily deposits is delayed. If the time fixed for making these statements has not been changed as to banks that nationalized prior to July 1, 1911, it would seem that they are liable to this penalty also, as well as for the specified assessments. If such legislation is valid, banks would be effectually deterred from making such a change. It seems clear that banks cannot be classified upon such a basis for the purpose of subjecting one class to such burdens from which the other class is relieved. It would manifestly refuse the banks so burdened the equal protection of the law. These provisos cannot be considered as an inducement to the passage of the act. It cannot be supposed that so reasonable and necessary legislation, relieving state banks in general from such unconscionable burdens, would not be enacted if banks which became national banks, while the operation of the former act was suspended, were also relieved.

The judgment of the district court is

AFFIRMED.